UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT
_____

No: 04-1951
_____

DELTA FUNDING CORPORATION

v.

ALBERTA HARRIS,
<u>Appellant</u>

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 02-cv-04080)
District Judge: Honorable John C. Lifland

_____

Before: SLOVITER, FISHER, and ALDISERT, <u>Circuit Judges</u>.

(Filed:   July 27, 2005)

_____

PETITION FOR CERTIFICATION OF QUESTION OF LAW
____


To the Honorable Justices of the New Jersey Supreme Court:

This matter came before the United States Court of Appeals for the Third Circuit

on March 22, 2000, on appeal from a final order entered by the United States District

1

Court for the District of New Jersey, Honorable John C. Lifland.  This court heard oral arguments on May 10, 2005.  Thereafter, the judges on the panel (Sloviter, Fisher, Aldisert, JJ.) unanimously voted to petition for certification to the New Jersey Supreme Court because we believe the case raises a serious and undecided issue of New Jersey law.[1]

The Court represents as follows:

**1.**  This appeal concerns the enforceability of an arbitration agreement entered into by a sub-prime home equity lender and an individual borrower.  The panel has reviewed all relevant briefs in this matter.  Resolution of the issues in this case requires interpretation of N.J. Stat. Ann. § 12A:2-302, relating to unconscionable contracts or contractual clauses, and the New Jersey state case law relating to severability of unlawful provisions of a contract.  See, e.g., Jacob v. Norris, McLaughlin & Marcus, 607 A.2d 142, 154 (N.J. 1992); Jones v. Gabrielan, 146 A.2d 495, 299 (N.J. Super. Ct. App. Div. 1958).

**2.**  N.J. Stat. Ann. § 12A:2-302 provides that:

> If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

---

[1] On November 19, 1999, the Supreme Court of New Jersey adopted N.J. Court Rule 2:12A permitting the Court of Appeals for the Third Circuit to certify questions of state law to the Supreme Court of New Jersey.  Rule 2:12A became effective on January 3, 2000.

The New Jersey Supreme Court has held that if "striking the illegal portion defeats the primary purpose of the contract, we must deem the entire contract unenforceable. However, if the illegal portion does not defeat the central purpose of the contract, we can sever it and enforce the rest of the contract." See Jacob, 607 A.2d at 154.

3.  The parties have not submitted an agreed statement of facts, and therefore the court sets forth the following facts which it believes are relevant to the question certified:[2]

(a) Delta Funding Corporation ("Delta"), a New York Corporation with its principal place of business in New York, is in the business of mortgage-lending. Delta makes loans primarily to borrowers in the sub-prime market. Because of poor credit history or even discrimination by traditional lenders, borrowers in the sub-prime market have historically been excluded from obtaining credit from traditional lenders. Loans made in the sub-prime market typically charge higher interest rates, points, and fees than comparable loans made in the prime market.

(b) On December 20, 1999, Alberta Harris, a 78-year old African-American woman with a sixth grade education who had very little financial sophistication, entered into a mortgage loan contract with Delta. The contract provided Harris with a $37,000

---

[2] Rule 2:12A-4 requires that a certification order contain "[t]he facts relevant to the question, showing fully the nature of the controversy out of which the question arose. If the parties cannot agree on a statement of facts, the certifying court shall set forth what it believes to be the relevant facts." N.J. Court Rule 2:12A-4(b).

3

loan secured by a mortgage on her Newark, New Jersey home. The annual percentage rate of the loan was 14%, resulting in monthly payments of approximately $444.44 per month.

 (c) At the time the loan contract was executed, Harris had been living in her Newark home for over thirty years and owned the property free and clear. Her only source of income was derived from social security benefits. In 1999, she received $900 per month, in 2002 she received $979 per month, and as of March 13, 2003, the date of her certification to the District Court, she received $988 per month. Harris' expenses included property taxes of roughly $810 per quarter, monthly electric bills ($707.23 in February 2003, $604.45 in January 2003, $462.89 in November 2002, and $95.41 in October 2002), life insurance payments ($55.60 per month), food expense ($100 per month), transportation, water and sewage bills, telephone bills and various other emergency expenses. Harris certifies that she has been forced to forgo needed dental and eye care because these services are not covered by Medicare and because she has no money to pay for them.

 (d) Harris was unable to make the required payments on the Delta loan. On February 28, 2002, Wells Fargo Bank, Minnesota N.A. ("Wells"), as trustee for the current holder of Harris' mortgage, instituted a mortgage foreclosure suit against Harris in the Superior Court of New Jersey, Essex County, Chancery Division. Harris filed an Answer, Counterclaim and Third Party Complaint, naming Delta as a third party

defendant. The complaint against Delta alleged violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, et seq., the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, et seq., and the New Jersey Consumer Fraud Act, N.J. Stat. Ann. 56:8-2, et seq.. Delta contests each of these claims.

(e) On August 19, 2002, Delta filed a petition in the United States District Court for the District of New Jersey seeking to compel arbitration of Harris' claims against it. Delta's mortgage loan agreement includes an arbitration agreement, which provides in pertinent part:

> Important Additional Disclosures. IF ARBITRATION IS CHOSEN BY ANY PARTY WITH RESPECT TO A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR HAVE A JURY TRIAL ON THAT CLAIM OR TO ENGAGE IN PRE-ARBITRATION DISCOVERY, EXCEPT AS PROVIDED FOR IN THE RULES OF THE ARBITRATION ADMINISTRATOR. FURTHERMORE, YOU WILL NOT HAVE THE RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION.

The arbitration agreement explicitly excludes "any action to effect a judicial or non-judicial foreclosure or to establish a deficiency judgment," and provides that "there shall be no right or authority for any Claims to be arbitrated on a class action or class-wide basis."

> Regarding costs, the agreement states that:
>
> Any arbitration hearing that you attend shall take place in the federal judicial district of your residence. At your written request, we will consider in good faith making a temporary advance of all or part of the filing,

5

> administrative and/or hearing fees in connection with any Claim you initiate as to which you or we seek arbitration. At the conclusion of the arbitration, the arbitrator will decide who will ultimately be responsible for paying the filing, administrative and/or hearing fees in connection with the arbitration. Unless inconsistent with applicable law, each party shall bear the expense of that party's attorneys', experts' and witness fees, regardless of which party prevails in the arbitration.
>
> . . .
>
> The costs of [ ] an appeal will be borne by the appealing party regardless of the outcome of the appeal.

The lender may select among three arbitration administrators: the American Arbitration Association ("AAA"), J.A.M.S./Endispute ("J.A.M.S.") or the National Arbitration Forum ("NAF").

Finally, the arbitration agreement provides that:

> If any portion of this Agreement is deemed invalid or unenforceable under any law or statute consistent with the FAA, it shall not invalidate the remaining portions of this Agreement or the Credit Transaction, each of which shall be enforceable regardless of such invalidity.

(f) On September 13, 2002, Harris filed an answer to Delta's petition to compel arbitration. On April 28, 2003, Harris filed a motion for summary judgment with the District Court. Harris conceded that she had executed the arbitration agreement and that all of her claims against Delta were within the broad scope of the arbitration agreement but claimed that the arbitration agreement was unenforceable "because it [was] an unconscionable contract of adhesion and because it does not allow [her] to effective[ly] enforce her statutory rights." Specifically, Harris argues that the arbitration agreement creates a "dual system" of adjudication whereby all foreclosure actions remain in the

6

court system, whereas all counterclaims against Delta based on the same facts and law must go to arbitration. She argues that this dual system "creates a grossly unreasonable burden of having to 'litigate' the same matter twice," Appellant's Br. at 17, and favors the lender because it places a pecuniary and procedural burden on the borrower, impairs the ability of the borrow to obtain counsel, and gives the lender a distinct discovery advantage.[3] Furthermore, Harris claims that the costs of arbitration, as well as the costs of appealing an adverse decision in the arbitration, are prohibitively expensive and prevent her from vindicating her statutory rights. Finally, Harris argues that the confidentiality of the arbitration proceedings and the ban on class actions favor the lender and are thereby substantively unconscionable.

(g) In an opinion dated March 2, 2004, the District Court rejected each of Harris' arguments, finding that although the arbitration agreement was a contract of adhesion, no provision therein was substantively unconscionable. The Court placed special emphasis on the fact that after Harris' motion for summary judgment was filed, Delta unconditionally offered to pay all arbitration costs in the present case, including any costs associated with an appeal.

---

[3] More specifically, Harris argued that in the foreclosure action, Wells Fargo will get full discovery as a matter of right under the New Jersey discovery standard, which it will undoubtedly share with Delta. Harris on the other hand, can only take limited discovery of Delta in the foreclosure action, because Delta is a non-party. Thus, in the subsequent arbitration proceeding, Delta will have a distinct discovery advantage.

Following the District Court's decision, the New Jersey Chancery Court before which the Well's foreclosure action was pending dismissed Harris' third party complaint as to Delta. Subsequently, pursuant to the New Jersey Rules of Civil Procedure, the parties agreed that Delta would be added as a party to the state court proceedings solely for the purposes of discovery.

**4.** Harris filed the present appeal from the March 2 order of the District Court. The American Civil Liberties Union of New Jersey, the New Jersey Institute for Social Justice, the New Jersey Citizen Action Coalition, the New Jersey Public Policy Research Institute, the American Association of Retired Persons, and the National Association of Consumer Advocates filed a brief amici curiae in support of Harris.

(a) Harris is represented by Madeline L. Houston, Houston & Totaro, 56 Broad Street, Suite 1, Bloomfield, N.J. 07003;

(b) The amici curiae are represented by Baher Azmy, Seton Hall Law School Center for Social Justice, 833 McCarter Highway, Newark, N.J. 07102; and

(c) Delta Funding is represented by Martin C. Bryce, Jr. and Alan S. Kaplinsky, Ballard Spahr Andrews & Ingersoll, LLP, 1735 Market Street, 51st Floor, Philadelphia, PA. 19103.

**5.** Harris argues to this court, in essence, that:

(a) The arbitration agreement at issue is substantively unconscionable because the high costs of arbitration (especially in light of her current financial status) combined with

the dual system of adjudication and the ban on class actions effectively preclude vindication of her statutory rights;

(b) The mandatory arbitration clause, particularly in the context of a sub-prime mortgage loan, undermines the New Jersey state legislature's desire to root out abusive home mortgage lending practices;

(c) Delta's post-contract offer to pay arbitration costs does not cure the unconscionability of the arbitration agreement because "the fairness of a contract must be viewed as of the time the contract was formed." Parilla v. IAP Worldwide Servs. V.I., Inc., 368 F.3d 269, 285 (3d Cir. 2004); and

(d) The cumulative effect of the unconscionable provisions permeate the entire agreement so that severance of certain provisions of the arbitration agreement would be inconsistent with N.J. Stat. Ann. § 12A:2-302.

6. The amici argue that:

(a) "Predatory lending is a significant public policy problem, which is perpetuated by mandatory arbitration clauses that contain the kind of provisions found in this case;"

(b) "Predatory lending has led to a devastating rash of foreclosures among low-income, minority and elderly borrowers in New Jersey and nationwide;"

(c) "Mandatory arbitration clauses such as Delta's are a central part of predatory lenders' strategy to avoid scrutiny of their practices;"

(d) "The high costs and the damaging cumulative split-forum effects created by the

mandatory arbitration agreement in this case are oppressive and will deter meaningful redress of the predatory lending crisis, making the entire agreement unconscionable as a matter of law;"

(e) "The aggregate effects of forcing Ms. Harris to litigate the same claims in two separate forums render the entire arbitration agreement unconscionable;" and

(f) "Because Delta's arbitration agreement will have a significant deterrent effect on litigants and will undermine efforts to remedy the predatory lending crisis, it is unconscionable in its entirety".

**7.** This court has consistently refrained from certifying cases to state courts when it could confidently predict how they would decide the issues on appeal. See, e.g., Travelers Indem. Co. v. DiBartolo, 171 F.3d 168, 169 n.1 (3d Cir. 1999) (declining to certify the question at issue to the Pennsylvania Supreme Court because the issue was not sufficiently important or difficult). However, we cannot predict with confidence how the New Jersey Supreme Court would decide the issues presented by this appeal. We are unaware of any New Jersey state court decision applying N.J. Stat. Ann. §12A:2-302 to a mandatory arbitration agreement executed as part of a sub-prime mortgage backed loan.

**8.** We believe that the questions of law certified are of such substantial public importance as to require prompt and definitive resolution by your Honorable Court.

NOW, THEREFORE, the following question of law is certified to the Supreme Court of New Jersey for disposition according to the rules of that Court:

      Is the arbitration agreement at issue in this case, or any provision thereof, unconscionable under New Jersey law, N.J. Stat. Ann. § 12A:2-302, and if so, should such provision or provisions be severed.

      This court acknowledges that the New Jersey Supreme Court may, pursuant to N.J. Court Rule 2:12A-4(c), reformulate this question.

      This court shall retain jurisdiction of the appeal pending the resolution of this certification.

                                  Circuit Judge

                                     /s/ Dolores K. Sloviter